UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DEBRA REARDON, | : | Case No. 3:11-cv-274 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| FOREST PHARMACEUTICALS, INC., | : | |
| | : | |
| Defendant. | : | |

_____

**DECISION AND ENTRY GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DOC. 14)**
_____

This civil case is before the Court on the Motion for Summary Judgment (Doc. 14) filed by Defendant Forest Pharmaceuticals, Inc. ("Forest"). Plaintiff Debra Reardon filed a Response to Defendant's Motion. (Doc. 21). Thereafter, Forest filed a Reply. (Doc. 23). Forest's Motion is now ripe for decision by the Court.

### I. STATEMENT OF FACTS[1]

Plaintiff, a female, was a territory sales representative for Forest from September 2004 to January 2011. During her tenure at Forest, Plaintiff's job duties primarily

---

[1] Pursuant to the Standing Order of the Court, Defendant filed a Proposed Statement of Undisputed Facts. (Doc. 14-1). When Plaintiff filed her Response without attaching the required Response to Proposed Undisputed Facts and Statement of Disputed Issues of Material Fact, the Court ordered her to do so and specifically referenced the Court's Standing Order by providing a direct link to the Standing Order. Defendant instead filed a document captioned "Plaintiff's Proposed Undisputed Material Facts" (Doc. 22), which generally restates Defendant's submission, but fails to state "in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's statement of Proposed Undisputed Facts, whether each of the facts asserted by the moving party is admitted or denied."

consisted of visiting physicians in a set geography and promoting certain prescription pharmaceutical products of Forest.

As a territory sales representative, Plaintiff was expected to call on a certain number of physicians per day utilizing selling skills, and in doing so, was required to develop pre-call plans to formulate a relevant message that is clear, concise and convincing. Forest also expects territory sales representatives to have an understanding and knowledge of its products, including clinical knowledge relating to the products and underlying diseases that the products treat. According to Forest, in order to affect prescribing habits of physicians and generate business, certain objective selling skills are required, including the ability to overcome objections that physicians may present and probing physicians to uncover prescribing habits and generate physician dialogue.

To assess the skills demonstrated by territory field representatives, Forest's division managers conduct periodic field rides or field trips with territory sales representatives to coach them and to observe their performance. These field rides are the main component upon which a territory sales representative's performance is evaluated. After field trips, division managers complete a field trip evaluation of the territory sales representative's performance during that field trip. An evaluation of 3.0 (on a scale of 1 to 5) is minimum standard performance.

In early 2008, Allyson Miller was Plaintiff's division manager, during which time Plaintiff's overall field trip evaluation scores were either at standard or just above standard. Even so, some of Plaintiff's individual competency scores, as rated by Miller,

fell below standard, including the assessment of whether Plaintiff "delivers business results," where Plaintiff scored a 2.86. The category of "delivers business results" assesses the subcategories of whether Plaintiff "developed specific objectives and appropriate pre-call plans for each physician call and utilize the findings on the call appropriately" and whether Plaintiff "executed [the] plan of action to achieve sales results and grow market share," among other assessments. Plaintiff scored at 2.5, below standard, in those subcategories.

In January 2009, Miller continued scoring Plaintiff below standard in the category assessing whether Plaintiff "delivers business results." Miller noted that, "[a]n example was our plan with Dr. Watkins - where does he write beta blockers, why, what patient type, etc. We haven't found out this information yet … With your tenure you should be expanding the call and digging deep into why a physician does what they do."

By mid-2009, Miller's evaluation of Plaintiff became more critical, with Miller noting that Plaintiff should "spend more time planning for [her] calls, specifically how [she] will open and what will move the business." Miller also stated that Plaintiff should "[m]ake sure that [her] call cycle reflects the MD's that you can move business with and that allows you to grow business. We can't go through the motions of marking off 10-12 MD's for the day, we have to strategize and plan what is the best plan for the entire time to make impact on every call."

Soon thereafter, in mid-2009, Justin Zeisloft took over as the interim division manager over Plaintiff's territory. In June 2009, Zeisloft rode with Plaintiff and gave her

an overall below standard field trip evaluation score, specifically, in the areas of consistently utilizing probing questions to generate physician dialogue and having strong working knowledge of managed care formularies and the effect on each physician. Plaintiff admits that neither Miller nor Zeisloft discriminated against her in any way and agrees that the field trip evaluation scores given by Miller and Zeisloft, including those that were below standard, were fair.

In October 2009, Plaintiff's territory underwent another realignment, and Plaintiff's division manager became Julio Rivera. During this time, and before Rivera became Plaintiff's division manager, Plaintiff's territory sales results ranked in the bottom half of the sales force nationally. Nevertheless, during the time Plaintiff's sales results were low, Rivera never criticized Plaintiff's low sales results specifically, but rather focused on the behaviors Plaintiff displayed during physician calls.

In October 2009 and January 2010, Rivera conducted field rides with Plaintiff. In each evaluation, Rivera gave Plaintiff an overall below standard field trip evaluation, noting deficiencies in the same categories as the field trip evaluations scored by Miller and Zeisloft, *i.e.*, the categories of "delivers business results" and "enhances sales effectiveness." Among the criticisms noted by Rivera was the criticism that, "[w]hile [Plaintiff] had a plan for each physician going into the call, [her] plan was not as specific as it needed to be in order to allow [her] to leverage all of [her] opportunities during the call[,]" as well as the criticism that "[w]hat [her] plan lacked was the specific data [she] needed in order to dig deeper . . . in order to overcome [the physician's] objections by

utilizing probes, call notes and other info from your partners to determine the true objections."

In February 2010, Rivera issued a Letter of Concern to Plaintiff after seeing no improvement.[2] Specifically, the reasons for the Letter of Concern, included Plaintiff's failure to make an impact and meet expectations with respect to specific selling skills.

After issuing the Letter of Concern, Rivera conducted three more field trips with Plaintiff, each resulting in scores below standard. In February 2010, Rivera noted that Plaintiff needed to "improve . . . the overall quality of the pre-call plan to extend beyond just what [she] want[s] to go over[,]" as well as "improve . . . the consistency with which [she is] able to overcome obstacles and objections that are keeping . . . doctors from using more of our products[.]" Rivera further noted that "[t]here have been too many instances where you have not been able to move business forward with your doctors by not being able to overcome their objections that are preventing growth." In April 2010, Rivera noted that Plaintiff had "not been able to demonstrate a meets standard level in the area of selling skills and being able to overcome objections and move business forward[.]"

In June 2010, noting no improvement in the areas noted in the Letter of Concern, Rivera issued Plaintiff a Formal Warning. The Formal Warning noted that there were a number of key areas regarding Plaintiff's selling skills that were below standard level, including her inability to handle physician objections effectively.

---

[2] Forest utilizes progressive discipline, including a letter of concern, formal warning, probation and, of course, discharge.

After issuing the Formal Warning, Rivera conducted three more field trips with Plaintiff, each resulting in below standard scores. Rivera continued to note deficiencies in Plaintiff's pre-call planning and handling physician objections. Believing Plaintiff's performance still had not improved, Rivera subsequently recommended to Chris Brown, Plaintiff's Regional Director, and human resources, that Plaintiff be placed on probation. Brown, along with April Amory, Plaintiff's Area Business Director, and Forest's human resources department, approved probation effective September 2010.

After issuing the Formal Probation, Rivera conducted two more field rides with Plaintiff, each resulting in below standard scores and noting the same performance deficiencies as noted in the Letter of Concern, the Formal Warning and the Formal Probation. In January 2011, Plaintiff was scheduled to go on her third field ride with Rivera since the probation. Rivera had been in contact with Mike Watson, Plaintiff's new Regional Director, about Plaintiff's continued lack of progress. Following the ride, Rivera called Watson and notified him that Plaintiff was not making progress in the areas needed to bring her evaluation scores up to standard. Shortly thereafter, based on the recommendation of Rivera and Watson, and with the approval of Amory and human resources, Forest terminated Plaintiff's employment effective January 27, 2011. Plaintiff was replaced by another female.

Contrary to her previous sales record, at the actual time of her discharge, Plaintiff's territory sales results were good. In fact, at the end of the third quarter for fiscal year 2011, Plaintiff was slated first in the company's ranking report for her

segment. However, based on Plaintiff's observed performance over an extended time, Forest did not credit Plaintiff's sales results to her actual performance. Rather, Forest suggests that a recently launched new drug, Savella, contributed to Plaintiff's sales numbers. According to Forest, Savella sales results nationally were very good, and they were particularly good throughout Ohio, in part due to the drug's unrestricted formulary codes and accessibility to physicians.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]"

*Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citing Fed. R. Civ. P. 56(e)(2)). Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id*. (citing Fed. R. Civ. P. 56(e)(2)). As stated by the Sixth Circuit, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Buarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029 (D.C.Cir.1988); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108 (6th Cir.1989), *cert. denied*, 494 U.S. 1091 (1990)).

### III.  ANALYSIS

Plaintiff alleges gender discrimination against Forest arguing that Rivera's adverse evaluations, and his ultimate recommendation that Plaintiff be terminated, were motivated by a discriminatory animus.[3] Plaintiff presents no direct evidence of gender discrimination, and, therefore, her claim is "analyzed pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 ...(1973), as modified by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 ... (1981)." *Bartlett v. Gates*, 421 Fed. Appx. 485, 488 (6th Cir. 2010)."

---

[3] Plaintiff's Complaint cites Ohio law in support of her claim. "Claims of age, sex, and disability discrimination brought under Ohio law are subject to the same analysis as corresponding claims brought under federal law." *Ferrette v. Cuyahoga Cnty Bd. of Elections*, 105 Fed.Appx. 722, 725 n.2 (6th Cir. 2004) (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir.2000); *Martin v. Barnesville Exempted Vill. Sch. Dist.*, 209 F.3d 931 (6th Cir.), *cert. denied*, 531 U.S. 992 (2000)).

"To make a prima facie showing of discrimination, a plaintiff must establish that he or she (1) 'was a member of a protected class'; (2) 'suffered an adverse employment action'; (3) 'was qualified for the position'; and (4) 'was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.'" *Colvin v. Veterans Admin. Med. Ctr.*, 390 Fed. Appx. 454, 457 (6th Cir. 2010). A plaintiff making the "prima facie showing by a preponderance of the evidence . . . is entitled to a presumption of discrimination." *Id*. (citing *Burdine*, 450 U.S. at 254).

Forest argues that summary judgment is proper because Plaintiff cannot demonstrate that she was treated differently from other similarly situated persons outside the protected class.[4] Plaintiff specifically argues that she was treated differently than a particular male co-worker, Joe Bolger, because Bolger was not terminated, and instead merely placed on probationary status, for "suggesting that if the Company paid a physician to do a sales presentation, he [the physician] might be willing to write more prescriptions for one of Forest's marketed drugs." (Doc. 21, PAGEID 699).

Individuals are considered "similarly situated" for purposes of establishing a *prima facie* case of discrimination where they "have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Jones v. Potter*, 488 F.3d 397, 405 (6th Cir. 2007).

---

[4] There is no dispute that Plaintiff was replaced by another female.

Here, there is no similarity between the Bolger's purportedly unethical suggestion and Plaintiff's purported job performance deficiencies.[5] Thus, having failed to evidence that a similarly situated male employee was treated differently than she, Plaintiff fails to present a *prima facie* case of gender discrimination.

Even assuming Plaintiff had satisfied her burden of establishing a *prima facie* case of gender discrimination, Defendant offers a non-discriminatory reason for Plaintiff's termination, *i.e.*, repeated failure to meet certain performance standards and expectations. An employer can overcome the presumption of discrimination by articulating "'a nondiscriminatory reason for its action.'" *Bartlett*, 421 Fed. Appx. at 488 (citing *Harris v. Metro. Gov. of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir.2010)); *see also Colvin*, 390 Fed. Appx. at 457. "Employers who provide a legitimate, non-discriminatory reason for their . . . decision will be entitled to summary judgment unless plaintiffs can rebut the employer's explanation by demonstrating pretext." *Id*.

Here, Defendant offers a non-discriminatory reason for Plaintiff's termination, *i.e.*, her repeated failure to meet certain performance standards and expectations. Thus, Plaintiff must evidence pretext.

---

[5] Plaintiff argues that she was required to prepare more detailed pre-call documentation than Bolger and that she was questioned in a more detailed manner than Bolger with regard to her knowledge of certain drugs. However, Rivera testified that Plaintiff was required to prepare pre-call documentation because of her observed pre-call deficiencies, deficiencies Bolger did not display. And Plaintiff also points to no evidence that Bolger's clinical knowledge was ever seen as deficient. In short, Defendant evidences that Plaintiff was subjected to these additional requirements because of her noted deficiencies, deficiencies that differed from Bolger's noted deficiencies. Thus, Plaintiff and Bolger are not similarly situated because they did not engage in the same conduct giving rise to discipline.

"To establish pretext, a plaintiff must show that an employer's stated reason: (1) had no basis in fact; (2) did not actually motivate the challenged conduct; or (3) was insufficient to explain the challenged conduct." *Simpson v. Vanderbilt Univ.*, 359 Fed. Appx. 562, 569-70 (6th Cir. 2009) (citation omitted). To meet this burden, a plaintiff must present "'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against [her].'" *Id*. (citations omitted). "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993); *see also Simpson*, 359 Fed. Appx. at 570.

Here, Plaintiff's argument with regard to pretext appears to focus solely upon her high sales record at the time of her termination. In essence, Plaintiff suggests that her failure to meet certain performance standards could not be the real reason for her termination because she was, at the time of her termination, the top salesperson at Forest. However, as evidenced by Defendant, and acknowledged by Plaintiff, sales results are only a single performance standard upon which territory sales representatives are evaluated.

As noted by another judge in this district, "simply because the Plaintiff had a high level of sales, this fact alone cannot prevent an employer from requiring other standards of performance." *Cosby v. Hoffman-La Roche, Inc.*, No. 2:10-CV-180, 2011 WL

6752426, *6 (S.D. Ohio Dec. 22, 2011). Accordingly, as held in *Cosby*, the mere "fact that [an employee within a protected class] has high sales, but is sanctioned for violating other neutral performance standards of an employer, does not establish pretext." In finding no evidence of pretext, and ultimately granting summary judgment in favor of the employer, the court in *Cosby* noted that, "[w]hile high sales may indicate that one aspect of an employee's work is superior, high sales numbers do not necessarily connect to overall satisfactory performance, particularly with regard to the marketing of a highly sophisticated product, such as a pharmaceutical drug." *Id*.

Here, Plaintiff herself admits that many factors affect sales numbers, including the performance of all sales representatives in a geographic area, adding new physicians to a territory, changing a call cycle, or launching a new product. (Doc. 22, PAGEID 878). As set forth by Defendants, because sales numbers cannot necessarily be attributed solely to the efforts of an individual territory sales representative, other individualized criteria are needed to evaluate the performance of individual territory sales representative, including those behaviors displayed when dealing with physicians. Plaintiff points to no evidence to the contrary, and, in fact, testified that observed behaviors are equally as important as sales numbers. (Doc. 16, PAGEID 469).

With regard to Rivera's evaluations, while Plaintiff generally points to the fact that her managers evaluated her performance based on subjective criteria,[6] she points to no

---

[6] Courts have concluded that, in making employment decisions, "the use of subjective criteria alone will not establish pretext." *Cotton v. City of Franklin*, No. 3:09-cv215, 2010 WL 3521751, at *11 (W.D. Tenn. Sept. 7, 2010) (citing *Browning v. Dep't of Army*, 436 F.3d 692, 697 (6th Cir. 2006)). Instead, "the use of subjective criteria must be considered in conjunction with . . . other evidence of pretext." *Id*.

specific evidence in an attempt to demonstrate that the evaluations were unfair. In fact, Plaintiff acknowledged in her deposition that some of the criticisms were fair. Further, a lack of discriminatory animus is supported by the fact that Plaintiff's previous managers, whom Plaintiff concedes harbored no discriminatory animus toward her, set forth the same or similar criticisms. Thus, Plaintiff cannot show pretext as she fails to present "sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against [her]." *Simpson,* 359 Fed. Appx. at 569-70 (6th Cir. 2009)

Accordingly, based on all of the foregoing, the Court concludes that Plaintiff fails to establish a *prima facie* case of gender discrimination, and, moreover, Plaintiff fails to evidence that Forest's non-discriminatory reason for her termination was a pretext to gender discrimination. Thus, Forest's Motion for Summary Judgment is **GRANTED**.

## IV. CONCLUSION

There being no genuine issue as to any material fact, and Forest being entitled to judgment as a matter of law on Plaintiff's sole claim of gender discrimination, Defendant's Motion for Summary Judgment (Doc. 14) is **GRANTED**. The Clerk shall enter judgment accordingly, and this case shall be terminated on the docket of this Court.

**IT IS SO ORDERED.**

Date: 10/31/12        *s/ Timothy S. Black*
　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　United States District Judge